No. 23-16141

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

───────────────

ROBERT F. KENNEDY JR.,
*Plaintiff-Appellant,*
*vs.*
GOOGLE LLC;
YOUTUBE, LLC,
*Defendants-Appellees.*

───────────────

Appeal from United States District Court
for the Northern District of California
U.S. District Court Case No. 3:23-CV-03880-TLT

───────────────

## APPELLEES' OPPOSITION TO EMERGENCY MOTION UNDER
## CIRCUIT RULE 27-3 FOR INJUNCTION PENDING APPEAL

───────────────

Jonathan H. Blavin
Juliana M. Yee
Carson Scott
MUNGER TOLLES & OLSON LLP
  560 Mission St.
  27th Floor
  San Francisco, CA 94105
  Telephone: (415) 512-4000

Ginger D. Anders
Donald B. Verrilli, Jr.
Helen E. White
MUNGER TOLLES & OLSON LLP
  601 Massachusetts Ave. NW,
  Suite 500 E
  Washington, DC 20001
  Telephone: (202) 220-1100
  Ginger.Anders@mto.com

*Attorneys for Defendants-Appellees Google LLC and YouTube, LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellees Google LLC and YouTube, LLC state as follows:

1. Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company; no publicly traded company holds more than 10% of Alphabet Inc.'s stock.

2. YouTube, LLC is a subsidiary of Google LLC, which is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet, Inc.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

    A.   FACTUAL BACKGROUND ....................................................2

    B.   PROCEDURAL BACKGROUND ...........................................5

STANDARD OF REVIEW .....................................................................7

ARGUMENT .........................................................................................8

II.   THE COURT LACKS JURISDICTION OVER KENNEDY'S APPEAL .................................................................................8

    A.   The Court Lacks Statutory Jurisdiction Over Kennedy's Appeal ........8

    B.   Kennedy's Appeal Is Moot. ...............................................11

III.   AN INJUNCTION PENDING APPEAL IS UNWARRANTED.................12

    A.   Kennedy Is Unlikely To Succeed on the Merits of His Appeal..........12

    B.   The Other Factors Also Weigh Against An Injunction.......................16

CONCLUSION .....................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*ACF Indus. Inc. v. Cal. State Bd. of Equalization*,
 42 F.3d 1286 (9th Cir. 1994) ........................................................................11, 12

*Akina v. Hawaii*,
 835 F.3d 1003 (9th Cir. 2016) ............................................................................12

*Batzel v. Smith*,
 333 F.3d 1018 (9th Cir. 2003) ............................................................................18

*Cabrera v. Martin*,
 973 F.2d 735 (9th Cir. 1992) ..............................................................................13

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
 29 F.4th 468 (9th Cir. 2022) ..............................................................................13

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*,
 827 F.2d 1291 (9th Cir. 1987) ............................................................................18

*Changizi v. Dep't of Health & Hum. Servs.*,
 No. 22-3573 (6th Cir. Sept. 14, 2023) (slip op. )................................................16

*CTIA v. City of Berkeley*,
 928 F.3d 832 (9th Cir. 2019) ..............................................................................16

*Doe v. Harris*,
 772 F.3d 563 (9th Cir. 2014) ..............................................................................16

*Doe v. San Diego Unified Sch. Dist.*,
 19 F.4th 1173 (9th Cir. 2021) ............................................................................19

*Force v. Facebook, Inc.*,
 934 F.3d 53 (2d Cir. 2019) ................................................................................17

*Givens v. Newsom*,
 830 F. App'x 560 (9th Cir. 2020) ........................................................................9

*Graham v. Teledyne-Cont'l Motors*,
 805 F.2d 1386 (9th Cir. 1987) ............................................................................10

*Hart v. Facebook Inc.*,
2023 WL 3362592 (N.D. Cal. May 9, 2023).....................................................15

*Informed Consent Action Network v. YouTube LLC*,
582 F. Supp. 3d 712 (N.D. Cal. 2022).............................................................15

*Lacey v. Maricopa County*,
693 F.3d 896 (9th Cir. 2012) (en banc) ..........................................................12

*Miami Herald Pub. Co. v. Tornillo*,
418 U.S. 241 (1974)........................................................................................17

*Miller v. Lehman*,
736 F.2d 1268 (9th Cir. 1983) .......................................................................10

*Missouri v. Biden*,
2023 WL 5821788 (5th Cir. Sept. 8, 2023) ..............................................15, 16

*NetChoice v. Att'y Gen., Fla.*,
34 F.4th 1196 (11th Cir. 2022) .......................................................................18

*NetChoice, L.L.C. v. Paxton*,
49 F.4th 439 (5th Cir. 2022) ..........................................................................17

*O'Handley v. Padilla*,
579 F. Supp. 3d 1163 (N.D. Cal. 2022)...........................................................17

*O'Handley v. Weber*,
62 F.4th 1145 (9th Cir. 2023) ............................................................. 2, passim

*Religious Tech Center*,
869 F.2d at 1308-09 .................................................................................1, 8, 10

*S. Bay United Pentecostal Church v. Newsom*,
959 F.3d 938 (9th Cir. 2020) ...........................................................................8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)..........................................................................................12

*Sutton v. Providence St. Joseph Med. Ctr.*,
192 F.3d 826 (9th Cir. 1999) ..........................................................................15

*Tandon v. Newsom*,
    992 F.3d 916 (9th Cir. 2021) ................................................................7

*Volokh v. James*,
    2023 WL 1991435 (S.D.N.Y. Feb. 14, 2023) ...................................17

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ...........................................................................7, 8

*Zaragosa-Solis v. Gutierrez*,
    No. 23-15306, 2023 WL 5380302 (9th Cir. Aug. 22, 2023) .........1, 11

**FEDERAL STATUTES**

42 U.S.C § 1983 .............................................................5, 7, 12, 13

Communications Decency Act § 230 ...........................................17, 18

**FEDERAL RULES**

Circuit Rule 27-1(d)(1) ...........................................................19

**TREATISES**

Wright & Miller, 11A Federal Practice & Procedure § 2947 Purpose
    and Scope of Preliminary Injunctions (3d ed. 2023) .........................11

**OTHER AUTHORITIES**

About Us, WHO, https://www.who.int/about ......................................14

Order, *Murthy v. Missouri*, No. 23A243 (Sept. 14, 2023) ......................16

**INTRODUCTION**

In his procedurally improper motion in this jurisdictionally deficient appeal, Plaintiff Robert F. Kennedy, Jr., asks this Court to ignore its own precedent and treat Google LLC and its platform, YouTube, LLC (collectively "Google") as arms of the state that are bound, rather than protected, by the First Amendment. It should not do so for two independently dispositive reasons.

First, this Court plainly lacks jurisdiction over Kennedy's premature appeal of the district court's denial of his motion for a temporary restraining order. This Court hears appeals from denials of temporary restraining orders only where they are "tantamount to the denial of a motion for a preliminary injunction." *Religious Tech. Ctr., Church of Scientology Int'l, Inc. v. Scott*, 869 F.2d 1306, 1308–09 (9th Cir. 1989). That cannot be so here, as a preliminary injunction hearing and briefing schedule remain on the district court's calendar—and the district court confirmed its intention to adjudicate the preliminary injunction motion by denying a proposed stipulation turning the TRO denial into a preliminary injunction denial. *See* Dkt. 30, 41.[1] Moreover, Kennedy has since amended his complaint and substituted the lone original claim for injunctive relief on which his motion for a temporary restraining order was based. Dkt. 42. This separately moots this appeal. *See Zaragosa-Solis v. Gutierrez*, No. 23-15306, 2023 WL 5380302, at *1 (9th Cir. Aug. 22, 2023).

---

[1] All references to "Dkt." herein refer to the District Court docket below.

Because this Court lacks jurisdiction over this appeal, it should deny Kennedy's motion and dismiss the appeal without proceeding any further. But in all events, Kennedy is unable to satisfy the high standard for an injunction pending appeal. He cannot show he is likely to prevail on appeal–with respect to this Court's jurisdiction or the merits of his claims. The district court correctly concluded that Kennedy's purported evidence establishes nothing more than that Google decided independently two years ago to address COVID- and vaccine-related misinformation, and that Google met with federal government officials to share information relevant to their respective efforts to fight the COVID pandemic. *See* Dkt. 32, at 6-8 ("TRO Order"). This case is therefore squarely controlled by *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023), in which this Court held that information sharing with government officials does not transform private parties' content moderation decisions into state action. TRO Order at 6-8.

The equitable factors also favor rejection of Kennedy's extraordinary request. In particular, requiring Google to permit content from Kennedy on YouTube that violates YouTube's policies would deprive *Google* of *its* First Amendment rights to choose what material to publish on its platform, causing *it* irreparable harm.

## BACKGROUND

### A. FACTUAL BACKGROUND

Defendant-Appellee YouTube, LLC ("YouTube"), a subsidiary of Defendant-

Appellee Google LLC, is a popular video-sharing platform. YouTube has policies that govern how people can use the service, including restrictions on the types of content that they can post. Declaration of Jonathan H. Blavin ("Blavin Decl.") Ex. C. Under YouTube's current medical misinformation policy, Google may remove "content [from YouTube] that promotes information that contradicts health authority guidance on the prevention or transmission of specific health conditions, or on the safety, efficacy or ingredients of currently approved and administered vaccines." *Id.* Ex. E. Google retains discretion and ultimate decision-making authority over when to remove material. *Id.* Prior medical misinformation policies were materially similar. *See* Street Decl. Exs. C-1, C-2.

Kennedy identifies two videos of him that Google has removed for violating its policies on medical misinformation: (1) a video of Kennedy speaking at Saint Anselm College's New Hampshire Institute of Politics (NHIOP) in March 2023, in which he "recount[ed] his suspicions regarding the expanded regime of childhood vaccines he suggests are linked to increased cases of autism in children," Street Decl. Ex. B; and (2) a video from June 2023 of an interview with podcast host Joe Rogan, A. Kennedy Decl. Ex. A.[2] In his interview with Rogan, Kennedy repeated the claim

---

[2] Kennedy has also referenced Google's removal of two other videos: (1) a video involving an interview with Jordan Peterson, which was removed "around June 20, 2023"; and (2) "an interview between [Kennedy] and former New York Post Reporter Al Guart". A. Kennedy Decl. ¶ 4.

that a vaccine "caused the autism epidemic," Blavin Decl. ¶ 12 (Rogan Interview at 56:20-57:30)—a claim that Kennedy's own exhibit labels a "conspiracy theor[y]," Street Decl. Ex. A.  In that same interview, Kennedy claimed "vaccinologists went around searching around the world to find the most horrendously toxic materials to add to vaccines."  Blavin Decl. ¶ 12 (Rogan Interview at 23:45-24:25).

The record reflects that Google "reviewed [the] content carefully, and . . . confirmed that it violate[d] [Google's] . . . policy."  A. Kennedy Decl. Ex. A.  These takedowns were unremarkable.  Google's "policies are enforced for everyone, regardless of the speaker's political views."  Street Decl. Ex. B.  "If content breaks [Google's] rules, [it] remove[s] it."  Blavin Decl. Ex G (A. Kennedy Decl. Ex. A).  Google continues to allow other videos of Kennedy to remain on YouTube.[3]

In 2021, years before Google took the complained-of removal actions at issue here, employees of Google met with representatives of the Office of the Surgeon General, the Executive Office of the President, and the Centers for Disease Control and Prevention, to discuss the proliferation of misinformation concerning COVID-19.[2]  Street Decl. Exs. G, F, L.  These meetings, however, primarily involved the exchange of information regarding Google's efforts to combat medical misinformation on YouTube, and largely consisted of Google employees informing

---

[3] *E.g.*, CNN, *Robert F. Kennedy Jr. explains why he is running for president*, YouTube (Apr. 29, 2023), https://www.youtube.com/watch?v=RRT8io6H0uo.

4

the government of "work that they were *already doing*" independently to fight misinformation. *Id.* Ex. H (Waldo Dep. at 120:14-15) (emphasis added).

### B.    PROCEDURAL BACKGROUND

Five months after the removal of his NHIOP speech, and three-and-a-half months after declaring his candidacy for President, Kennedy filed a complaint in the District Court for the Northern District of California alleging that Google had violated his First Amendment rights and seeking an injunction under 42 U.S.C § 1983 to "restore any videos of Mr. Kennedy's political speech that it has removed during the 2024 presidential campaign," as well as a declaration that Google's medical misinformation policies are unconstitutional. Dkt. No. 1 at 13. One week after that, Kennedy filed an application for a temporary restraining order, seeking to bar Google from "using either the 'Vaccine misinformation policy' or the 'COVID-19 medical misinformation policy' to remove videos of [Plaintiff's] speech from YouTube . . . pending a trial on the merits." Dkt. 7-4 at 2.

Following briefing and a hearing, Judge Thompson issued a thorough order denying the TRO application and Kennedy's request for expedited discovery. TRO Order at 11. The district court, applying this Court's controlling decision in *O'Handley*, 62 F.4th at 1145, held that Kennedy failed to "mak[e] a colorable claim that [his] First Amendment rights have been infringed[] by way of a state actor," noting that "[t]here is less evidence of entwinement in the present case then there

5

was in *O'Handley*," where this Court also found no state action. *Id.* at 8. In so concluding, the district court remarked that "[t]here is no evidence . . . that any of the identified government officials . . . demanded that Google adopt a COVID-19 medical misinformation or vaccine misinformation policy" or "communicated with Google regarding Kennedy at all." *Id.* at 7. It also noted Kennedy had conceded at oral argument that the government did not "coerce" Google. *Id.* at 6. The court further determined Kennedy had suffered no irreparable harm, citing among other facts that Kennedy "has shown no urgency to resolve this issue earlier," *id.* at 9, and that the requested TRO ran against the "strong public interest in protecting the community from an international public health crisis." *Id.* at 10. Six days later, Kennedy filed a notice of appeal. Dkt. 33.

Nearly three weeks after the court denied his motion for a TRO, and two weeks after he filed a notice of appeal (and *six months* after the NHIOP video was removed), Kennedy filed this "*emergency*" motion for an injunction pending appeal ("Motion" or "Mot."). Mot. at 56. Shortly after Kennedy filed his notice of appeal, Counsel for Google contacted Counsel for Kennedy, notifying him that "[o]n the current record," this Court "would lack jurisdiction [over this appeal] given that there are already-scheduled PI proceedings in the district court." Blavin Decl. Ex. I. The Parties negotiated a joint stipulated request to the district court converting the order denying Kennedy's TRO into a denial of a preliminary injunction and vacating

6

the preliminary injunction briefing and hearing dates, in order to "enable [Kennedy] to pursue the current appeal." *Id.* Soon after Kennedy filed this "emergency" motion, the parties finalized and filed the joint stipulated request. Dkt. 40. The district court denied the request the next day, Blavin Decl. Ex. J (Dkt. 41), leaving in place the previously-ordered briefing schedule and November 7, 2023 hearing date on Kennedy's anticipated motion for preliminary injunction.

On September 12, 2023, Kennedy filed an amended complaint. Dkt. 42. His amended complaint withdraws his cause of action under § 1983 and alleges two new causes of action: (1) A claim for "Declaratory/Injunctive Relief under First Amendment/State Action Doctrine"; and (2) A claim for declaratory relief under Article I, Section 2 of the California Constitution. *Id.* at 14–20.

## STANDARD OF REVIEW

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). "In determining whether to grant an injunction pending appeal," this Court generally "appl[ies] the test for preliminary injunctions." *Tandon v. Newsom*, 992 F.3d 916, 919 (9th Cir. 2021). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

## ARGUMENT

## II.   THE COURT LACKS JURISDICTION OVER KENNEDY'S APPEAL

The Court should deny Kennedy's injunction and dismiss the appeal because it lacks jurisdiction over this appeal. The Court has ordered Kennedy to show cause why his appeal from a denial of a temporary restraining order should not be dismissed for lack of statutory jurisdiction. Order (Sept. 1, 2023). Kennedy has not made and cannot make such a showing. In addition, Kennedy's recent amendment of his underlying complaint moots his appeal. Each of these jurisdictional defects independently requires both denial of the motion and dismissal of the appeal.

### A.   The Court Lacks Statutory Jurisdiction Over Kennedy's Appeal

Kennedy takes the remarkable and unsupported position that he may simultaneously pursue his appeal and a motion for a preliminary injunction in the district court. This Court has jurisdiction to hear an appeal from the denial of temporary restraining orders only in the rare case where it is "tantamount to the denial of a preliminary injunction." *S. Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir. 2020). Appeals from denials of temporary restraining orders are so limited because they are usually "premature," inviting "uneconomical piecemeal appellate review." *Religious Tech. Ctr.*, 869 F.2d at 1308.

Kennedy's appeal plainly does not meet this high standard. To state the

8

obvious, the district court cannot have issued an order "tantamount to the denial of a preliminary injunction" when preliminary injunction proceedings are scheduled to begin in the district court in just under two weeks. Dkt. 30; *see Givens v. Newsom*, 830 F. App'x 560 (9th Cir. 2020) (dismissing appeal of denial of TRO because of district court's invitation to present additional evidence). The district court even *denied* a proposed stipulation between the parties requesting that the denial of the temporary restraining order be converted to a denial of a preliminary injunction.[4] *See* Blavin Decl., Ex. J (Dkt. 41). There is thus no question that the district court intends to proceed with the preliminary injunction hearing and consider Kennedy's request for a preliminary injunction on its merits. When it does, the court has the option to grant Kennedy *precisely the same relief* Kennedy seeks by this motion. Put differently, *this motion itself* functions as a vehicle for immediate appellate review–and potential reversal–of a temporary restraining order denial. Kennedy concedes as much when he claims his failure to first seek relief in the district court is excusable because the district court had "just denied Kennedy's application for a TRO based on its belief that Google cannot be held liable under the state action doctrine." Mot at v. Awarding an injunction in a case like this defeats the entire

---

[4] Contrary to Kennedy's suggestion, Mot. at iv-v, Google has *never* agreed that this Court had jurisdiction over Kennedy's appeal. It agreed to join a stipulated request that it believed would confer jurisdiction only if the court vacated the preliminary injunction briefing and hearing, but the district court denied that request. *See* Blavin Decl. Ex. I.

purpose of avoiding inefficient piecemeal appellate review by precluding appeals of temporary restraining order denials. *See Religious Tech. Ctr.*, 869 F.2d at 1308.

The cases Kennedy cites are easily distinguishable.[5] In *Religious Tech Center*, this Court exercised jurisdiction only because the district court had already told the parties that "I don't believe that the appellate court feels that in this case an injunction is appropriate . . . I would say that we don't have anything much to talk about." 869 F.2d at 1308–09. Here, the district court expressly kept the schedule and hearing for a preliminary injunction motion. And *Miller v. Lehman* involved the purely legal issue of claim preclusion—the outcome of which could not be altered by a second opportunity to submit evidence and argument in support of the plaintiff's request for preliminary relief. 736 F.2d 1268, 1269 (9th Cir. 1983). But Kennedy's claim does not present such a pure question of law; the district court denied his application because the *evidence* he submitted to support his legal arguments were insufficient. *See* TRO Order at 7–8. With a preliminary injunction briefing schedule and hearing date in place, Kennedy will now have a second bite at the apple. Thus, unlike either *Miller* or *Religious Tech Center*, Kennedy's appeal

---

[5] Kennedy argues that he is entitled to emergency appellate review now because "the controversy [would] become moot" after the 2024 election, when his trial date is set. Mot. at 29. But the relevant timeline is the duration of this appeal, just as it was in *Graham*, the case Kennedy cites, where this Court concluded the case would become moot during the period it would take to decide any motion for preliminary injunction. *Graham v. Teledyne-Cont'l Motors*, 805 F.2d 1386, 1387–88 (9th Cir. 1987).

10

amounts to little more than an attempt to circumvent normal appellate procedures and obtain this court's review before the issues have been fully litigated below. It is the paradigmatic case that falls beyond this Court's appellate jurisdiction, the limits of which this Court noted in its September 1, 2023 order to show cause.

### B. Kennedy's Appeal Is Moot.

Kennedy mooted his own appeal, and this "emergency" motion, by amending his complaint while the appeal was pending–including by substituting his lone claim for injunctive relief for another claim with an entirely different cause of action. This Court recently dismissed an appeal from a denial of a preliminary injunction as moot because "during the pendency of th[e] appeal, [the appellant] amended the complaint that formed the basis of the appeal." *Zaragosa-Solis*, 2023 WL 5380302, at *1. And it did so notwithstanding the substantive similarity between the original and amended complaint. *See id.* The Court should do the same here.

That Kennedy's appeal is moot is the obvious consequence of two equally fundamental rules of civil procedure: First, that a request for preliminary relief is derived from and limited to the substance of a relief permitted by the claims asserted in the complaint. *See* Wright & Miller, 11A Federal Practice & Procedure § 2947 Purpose and Scope of Preliminary Injunctions (3d ed. 2023). When a claim is no longer asserted, it cannot form the basis of any injunctive relief. *See ACF Indus. Inc. v. Cal. State Bd. of Equalization*, 42 F.3d 1286, 1292 (9th Cir. 1994) (dismissing

11

as moot certain claims on appeal from the denial of a preliminary injunction because the claims were dismissed below). The second principle is that the filing of an amended complaint "super[s]edes the original complaint and renders it without legal effect." *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc). Here, Kennedy has abandoned his Section 1983 claim—originally, his only claim for injunctive relief—and replaced it with a different cause of action. *Cf. ACF Indus. Inc.*, 42 F.3d at 1292. Even if Kennedy were right that the district court had erred in denying a temporary restraining order, this Court could not reverse and enter the relief he had requested, rendering his appeal moot. *See Akina v. Hawaii*, 835 F.3d 1003, 1010 (9th Cir. 2016).

## III. AN INJUNCTION PENDING APPEAL IS UNWARRANTED

### A. Kennedy Is Unlikely To Succeed on the Merits of His Appeal

Kennedy is unlikely to succeed on the merits of his appeal for three simple reasons. First, Kennedy cannot *prevail* on his appeal because he cannot show that he is likely to establish this Court's *jurisdiction* over it for the reasons explained above. *See supra* Part I. Thus, the Court need not and cannot reach the merits of his motion. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Second, Kennedy based his application for a temporary restraining order on a claim under Section 1983 but has not alleged—let alone submitted evidence of—any action by any *state* official as is required to support that claim. *See* 42 U.S.C.

12

§ 1983. Section 1983 permits suit only against parties acting "under color of" *state law. Id.* Accordingly, this Court has held that private entities cannot be held liable under Section 1983 unless "they have conspired with or acted in concert with state officials to some substantial degree." *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992). There is no allegation or argument in this case that Google conspired with any state officials.

Third, Kennedy is not likely to succeed in satisfying his heavy burden of persuading this Court that the district court abused its discretion by refusing to count this case among the "exceptional cases" in which a private party should be treated as a state actor. *O'Handley*, 62 F.4th at 1155; *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics,* 29 F.4th 468, 475 (9th Cir. 2022). In *O'Handley*, this Court held that neither the nexus nor joint action tests were satisfied where Twitter and the California Secretary of State's Office jointly cooperated to establish and refine procedures by which the state could flag potentially harmful content on that platform. 62 F.4th at 1156, 1158–60. And the Court reached that conclusion notwithstanding the fact that Twitter removed over 98% of posts flagged by the state–including one of the plaintiff's. *Id.* Applying this Court's analogous decision in *O'Handley*, the district court correctly held that Google's generalized communications with the federal government about COVID misinformation in 2021 did not satisfy either of the two relevant tests, the nexus or joint action test, under

13

which Kennedy sought to hold Google liable as a state actor. TRO Order at 7–8.

Here, as below, Kennedy has offered even less evidence of a state action than in *O'Handley*. *See* TRO Order at 7–8. Kennedy conceded at oral argument on the TRO that there was no evidence of coercion. Blavin. Decl. Ex. H (TRO Hearing Tr. 11:6-14); TRO Order at 6. Indeed, the documents on which Kennedy relies reveal that Google was *independently* taking steps to mitigate vaccine misinformation on its platform, *see* Street Decl. Ex. H (Waldo Dep. at 119–21), and that its meetings with the government amounted, at most, only to information sharing about Google and the government's respective efforts, *see, e.g.*, Blavin Decl. Ex. B (Crawford Dep. at 103:20-104:10) (no one at CDC "craft[ed] the content policy" of "any [] social media company" or even "g[ave] input on what such a policy should look like"). The evidence shows nothing more than the kind of information sharing between "private and state actors" who were "generally aligned in their missions to limit the spread of misleading . . . information" that this Court held insufficient in *O'Handley*. 62 F.4th at 1158–60.

Kennedy offers only conclusory assertions to the contrary, Mot. at 34, without offering any reason to second-guess the district court's findings. His argument that Google's reference to WHO and local health authority guidelines somehow made the *federal government* the puppetmaster behind Google's content moderation policies for YouTube—rejected below—likewise fails. The WHO is not the federal

government. *See* About Us, WHO, https://www.who.int/about. If anything, Google's decision to look to the WHO in its medical misinformation policies suggests that the federal government has *not* created a rule or decision that Google is required to follow. *See Informed Consent Action Network v. YouTube LLC*, 582 F. Supp. 3d 712, 721 n.4 (N.D. Cal. 2022). And regardless of what external authorities Google consulted, it always retains ultimate discretion over what posts to remove. *See O'Handley*, 62 F.4th at 1160; Street Decl. Exs. C-1, C-2, D.

Kennedy's claim on appeal boils down to an argument that the district court—and this Court on appeal—should apply the Fifth Circuit's decision in *Missouri v. Biden*, 2023 WL 5821788 at *1 (5th Cir. Sept. 8, 2023), rather than *O'Handley*. But *O'Handley*—not *Missouri v. Biden*—controls in this Circuit. Judge Breyer, applying *O'Handley*, recently held that much of the same evidence Kennedy relies upon from *Missouri v. Biden* did not establish state action under Ninth Circuit precedent. *See Hart v. Facebook Inc.*, 2023 WL 3362592, at *3 (N.D. Cal. May 9, 2023). In any event, *Missouri* is distinguishable. Kennedy concedes that there was no evidence of coercion before the Court here, *id.*, which was one of the key bases on which the Fifth Circuit found in the plaintiffs' favor. *See Biden*, 2023 WL 5821788, at *19–23. And *Missouri v. Biden* dealt with government defendants—not private actors—so no state-action question was presented. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838–41 (9th Cir. 1999). And,

15

because the Fifth Circuit considered only the *government*'s potential liability, it did not conduct any platform-specific inquiry to find state action by any particular platform as to any particular plaintiff. The Sixth Circuit recently distinguished *Missouri v. Biden* on this very basis in rejecting allegations that Twitter's application of its COVID-19 content policy was state action.[6] *See Changizi v. Dep't of Health & Hum. Servs.*, No. 22-3573 (6th Cir. Sept. 14, 2023) (slip op. at 8 & n.8).

## B.    The Other Factors Also Weigh Against An Injunction

***Irreparable Harm****.* Kennedy's irreparable harm argument fails for the same reasons his claim is unlikely to succeed on the merits—Google is a private company, not a state actor. Absent a "colorable First Amendment claim," *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014), Kennedy fails to demonstrate irreparable harm. *See CTIA v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019).

Even assuming arguendo a likelihood of success on the merits, Kennedy's arguments and documents undermine any suggestion that he will suffer irreparable harm during the pendency of this appeal. Kennedy admits that his basis for calling upon this Court's emergency motion procedures is merely one of efficiency. Mot. at iv. But Kennedy's own conduct confirms the lack of an emergency. Kennedy delayed until August—five months after the removal of a video of one of his

---

[6] On September 14, 2023, Justice Alito entered a temporary administrative stay of the preliminary injunction in *Missouri v. Biden*. *See* Order, *Murthy v. Missouri*, No. 23A243 (Sept. 14, 2023).

speeches, *see* Street Decl. Ex. A—to file suit and bring a TRO application, and then waited nearly three weeks after the district court's TRO denial to file this motion.

*Balance of Equities*. Google would suffer significant harm from a court order mandating that it carry certain speech against its will, because the temporary injunction Kennedy seeks would violate *Google's* First Amendment rights. The "choice of material to" publish "and the decisions made" as to the "treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment" and are protected by the First Amendment. *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974); *NetChoice v. Att'y Gen., Fla.*, 34 F.4th 1196, 1210 (11th Cir. 2022) (First Amendment protects online platforms' content moderation decisions).[7]

Kennedy's attempt to distinguish these precedents on the basis of the protections offered to online platforms by Section 230 of the Communications Decency Act is illogical. Section 230 and the First Amendment operate to advance, not undermine, protections for online platforms' decisions relating to content curation and editorial discretion. *See Force v. Facebook, Inc.*, 934 F.3d 53, 68 (2d

---

[7] Although Kennedy relies on one, outlier out-of-circuit opinion holding that online platforms are not entitled to such First Amendment protections, *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), that outcome is inconsistent with Supreme Court precedent, as other courts have explained. *See NetChoice*, 34 F.4th at 1210; *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–88 (N.D. Cal. 2022); *Volokh v. James*, 2023 WL 1991435, at *6 (S.D.N.Y. Feb. 14, 2023).

Cir. 2019); *NetChoice*, 34 F.4th at 1210; *see also Batzel v. Smith*, 333 F.3d 1018, 1028 (9th Cir. 2003) (Congress enacted Section 230 "to *further* First Amendment . . . interests on the Internet." (emphasis added)).

Google possesses a strong First Amendment interest in enforcing its policies. The misinformation policies that govern which content may be removed are a reflection of Google's "belie[fs]" about what "people should be able to share" on YouTube, Street Decl. Ex. C-2, and Google removes videos only after "careful[]" review and assessment against its policies. A. Kennedy Decl. Ex. A. (Takedown Notice). Google also has a strong interest in the application of its policies in maintaining users' goodwill and trust in its platform. *See* Street Decl. Ex. C-2 (YouTube medical misinformation policy stating the "safety of our creators, viewers, and partners is our highest priority").[8]

By contrast, the only purported harm Kennedy claims that is not based on the alleged violation of his constitutional rights is that "the chilling effect from Google's actions hurts [his] campaign." Mot. at 51. But as the district court found, "[t]here are numerous other ways that [Kennedy] may share video content concerning his viewpoints," TRO Order at 8–9, including Facebook and Twitter, R. Kennedy Decl.

---

[8] Given Google's First Amendment interests, the injunction Kennedy seeks is also patently overbroad insofar as it bars Google from enforcing *any* of its policies against him, regardless of whether those enforcement decisions are the product of any state action. *See Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291 (9th Cir. 1987).

¶ 4.  And, of course, YouTube continues to host a substantial number of other videos featuring Kennedy.

*Public Interest*.  As the district court correctly held below, the public interest also weighs heavily against temporary injunctive relief.  As the Office of the Surgeon General materials attached to Kennedy's motion state, "the proliferation of health misinformation during the pandemic has been both extensive and dangerous" and "pos[es] a growing threat to the nation's health."  Street Decl. Ex. K.  Forcing Google to host and serve medical and vaccine misinformation on YouTube would be contrary to these important public health goals and the public interest, as the district court correctly held.  TRO Order at 10; *cf. Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021).

## CONCLUSION

For the foregoing reasons, this Court should deny Kennedy's "emergency" motion for an injunction pending appeal and dismiss his appeal.[9]

---

[9] This Court may also strike Kennedy's 40-page motion under Circuit Rule 27-1(d)(1), which provides that a motion may not exceed 20 pages except by permission of this Court.

Dated:  September 15, 2023

/s/ Ginger D. Anders

Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave NW,
Suite 500E
Washington, DC 20001
(202) 220-1100

*Attorneys for Google LLC and YouTube, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

Dated:  September 15, 2023

/s/ Ginger D. Anders
Ginger D. Anders
Ginger.Anders@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
(415) 512-4000

Attorneys for Google, LLC and
YouTube, LLC